IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| INTERNATIONAL ANIMAL SEMEN BANK, INC., | Case No.: 3:25-cv-01688-AN |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| KATHRYN ROBERTS; ATLANTA CANINE REPRODUCTION, LLC; and SAVANTS CANINE SERVICES, LLC, | |
| Defendants. | |

This trademark infringement action arises out of a former working relationship between plaintiff International Animal Semen Bank, Inc. and defendants Kathryn Roberts, Atlanta Canine Reproduction, LLC ("Atlanta Canine"), and Savants Canine Services, LLC ("Savants"). Savants moves to dismiss all claims against it for lack of personal jurisdiction. Plaintiff opposes. Upon review of the parties' filings, the Court finds this matter appropriate for decision without oral argument. *See* Local R. 7-1(d). For the reasons described below, Savants' motion is DENIED.

## LEGAL STANDARD

A defendant may move to dismiss an action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The plaintiff then "bears the burden of demonstrating that jurisdiction is appropriate." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). If a "court decides the motion without an evidentiary hearing, . . . then 'the plaintiff need only make a prima facie showing of the jurisdictional facts.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). Even so, the plaintiff "cannot simply rest on the bare allegations of its complaint." *Schwarzenegger*, 374 F.3d at 800. When a defendant "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction," they are said to present a "factual attack." *Safe*

*Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.*  At the same time, the Court must accept as true all uncontroverted allegations in the complaint and must resolve conflicts regarding statements contained in affidavits in the plaintiff's favor.  *Ranza v. Nike*, 793 F.3d 1059, 1073 (9th Cir. 2015).

## BACKGROUND

**A.     Factual Background**[1]

Plaintiff operates under the registered name International Canine Semen Bank ("ICSB").  Compl., ECF 1, ¶ 10.  ICSB was founded in 1971 and is domiciled in Oregon.  *Id.* ¶¶ 2, 8.  ICSB operates outside of Oregon by entering into licensing agreements with various businesses that operate under the registered ICSB name—for example, ICSB–Knoxville and ICSB–Miami.  *Id.* ¶ 11.

In 2010, defendant Kathryn Roberts entered into one such licensing agreement with ICSB to operate a licensed company under the registered ICSB name—specifically, ISCB–Atlanta—in a 50-mile area near Acworth, Georgia.  *Id.* ¶ 14.  Shortly thereafter, Roberts founded Atlanta Canine, which operated under the business name ICSB–Atlanta.  *Id.*

In 2020, Roberts and Atlanta Canine entered into another licensing agreement with ICSB which provided Atlanta Canine an exclusive license to operate within a 150-mile area near Canton, Georgia.  *Id.* ¶ 17.  The parties expanded the license territory in 2022 and again in 2023.  *Id.* ¶¶ 18-19.  The 2023 expansion additionally allowed Atlanta Canine to run mobile operations at dog shows and similar events within part of Tennessee.  *Id.* ¶ 19.  Under "Venue," the licensing agreement provides:

> This Agreement has been made entirely within the state of Oregon.  This Agreement shall be governed by and construed in accordance with the laws of the state of Oregon.  If any suit or action is filed by any party to enforce this Agreement or otherwise with respect to the subject matter of this Agreement, venue shall be in the federal or state courts in Clackamas County, Oregon.

---

[1] The following factual background is based on the allegations in the complaint, as well as the declarations submitted alongside the parties' briefing.  Any conflicts between the submitted declarations have been resolved in plaintiff's favor and all uncontroverted allegations in the complaint have been accepted as true for purposes of addressing this motion.

Decl. of Tong Wu ("Wu Decl."), ECF 13-1, ¶¶ 6-7 & Ex. 1 at 6 (all citations to ECF pagination).  Roberts signed this agreement both in her individual capacity and in her capacity as president of ICSB–Atlanta.  *Id.* at Ex. 1 at 6

In early 2025, plaintiff discovered that Roberts and Atlanta Canine had attended dog shows in various states across the country, all outside of their designated areas.  Compl. ¶ 22.  On May 19, 2025, plaintiff notified Roberts and Atlanta Canine that they had breached the contract by using plaintiff's trademarks without permission.  *Id.* ¶ 23.  Despite this, on June 6, 2025, Roberts and Atlanta Canine entered into a license addendum that provided a one-time grant of license to operate at a dog show in Florida.  *Id.* ¶ 20.

On June 13, 2025, Roberts's husband, John Heltzel, created Savants at Roberts's direction.  *Id.* ¶¶ 26-27; Decl. of John Heltzel ("Heltzel Decl."), ECF 8-1, ¶¶ 3-4 & Ex A.  Savants filed its Articles of Organization with the Georgia Secretary of State that same day, listing Heltzel as the company's only organizer and registered agent.  Heltzel Decl. Ex. A.  Savants is not established as a subsidiary, parent, or affiliate of ICSB–Atlanta.  *Id.* ¶ 5.  Roberts is listed as an authorized signatory on Savants' bank account for the sole purpose of authorizing financial transactions as Heltzel's agent.  *Id.* ¶ 9.  Five staff members are employed by Savants in either part-time or full-time capacities.  *Id.*  Savants maintains its own payroll and administrative structure for these employees.  *Id.*  Sometime after its founding, Savants purchased a trailer from ICSB–Atlanta and re-registered the trailer in Savants' name.  *Id.* ¶ 7.  Savants has purchased additional equipment elsewhere, including software, uniforms, lab equipment, and office technology.  *Id.*

Savants is domiciled in Georgia, and operates out of a residential property in Canton, Georgia that is owned by Roberts.  *Id.* ¶ 10; Wu Decl. ¶ 12.  Atlanta Canine operated out of that same residential property when it was a licensed ICSB center.  Wu Decl. ¶ 12.  Savants does not hold an office in Oregon, conduct business activities in Oregon, hold an Oregon bank account, use Oregon property, or pay Oregon taxes.  Heltzel Decl. ¶ 10.  While Savants has visited numerous events across the United States, it has not attended any in Oregon.  *Id.* ¶¶ 10, 13-14.  Savants has run several national advertising campaigns, including an advertising campaign published in several dog show magazines with national circulation and a Facebook

advertisement.  *Id.* ¶¶ 11-12 & Exs. B-E.

On June 24, 2025, plaintiff formally terminated the licensing agreement with Roberts and Atlanta Canine.  Compl. ¶ 25.

On July 31, 2025, Savants attended a dog show in Canfield, Ohio, although it was not listed on the show's attendant brochure, termed a "Premium List."  Decl. of Melanie Wilson ("Wilson Decl."), ECF 13-2, ¶¶ 3-5.  ICSB and International Canine Semen Bank–Atlanta, however, were both listed as attendants. *Id.* ¶ 4.  A private investigator hired by plaintiff visited Savants' booth, where she spoke with Heltzel and Roberts.  *Id.* ¶¶ 1-3, 5.  Both wore shirts bearing the Savants name and logo, and both spent time inside the Savants trailer.  *Id.* ¶ 5.  The private investigator told Heltzel and Roberts that they "noticed on the premium list that it's a different semen bank that's supposed to be here."  *Id.* ¶ 6.  Roberts responded, "So it's still us.  We did a name change, a rebranding."  *Id.*  Heltzel added, "It is that company.  We're just a new co-, new name."  *Id.*  The private investigator understood Roberts and Heltzel to be referring to International Canine Semen Bank–Atlanta.  *Id.*  The investigator responded, "New name but same company?"  Roberts responded affirmatively and Heltzel said, "Same company, same people, same everything."  *Id.* ¶ 7.

Another private investigator plaintiff hired attended a dog show in McDonald, Tennessee on September 12, 2025.  Decl. of Steve Fisher ("Fisher Decl."), ECF 13-3, ¶¶ 1-3.  Once again, the Premium List included ICSB names—specifically, ICSB Atlanta and International Canine Semen Bank–Atlanta— but did not include Savants.  *Id.* ¶ 4.  Once again, Savants was in attendance.  *Id.* ¶ 5.  The private investigator approached Savants' trailer and spoke with Roberts, who was wearing a Savants branded shirt and jacket.  *Id.*  The private investigator told Roberts they were confused "because 'ICSB Atlanta was listed in the Premium List, but 'ICSB Atlanta' was not present at the dog show, and a business by the name of" Savants was present instead.  *Id.* ¶ 6.  Roberts responded, "It was under the name ICSB.  We did a name change.  It's still me."  *Id.*  The investigator asked, "Is this still the same company?" to which Roberts responded, "Same company.  I just did a name change.  I went independent."  *Id.* ¶ 7.  Upon further inquiry, Roberts clarified, "There's nothing different.  Just the name."  *Id.* ¶ 8.  She later added, "ICSB.  That is me. Nothing's changed.  The only thing that's changed is the name.  That's it.  That's it.  That's it."  *Id.* ¶ 9.

On September 20, 2025, the president of ICSB visited, downloaded PDFs of, and screenshotted Savants' website. Wu Decl. ¶ 13 & Exs. 2-3. The website is branded "Savants" and allows visitors to log in with a username and password. *Id.* at Exs. 2-3. Under the Terms of Use, the website says that the visitor "authorize[s], by execution of this agreement, the advertisement of the availability of my dog's semen on the ISCB [*sic*] Atlanta Website" and "permit[s] and authorize[s] Kathryn Roberts and ICSB Atlanta to use the photographic image of [the visitor's] dog in all advertising including on her website." *Id.* at Ex. 2 at 7. The Terms of Use also state that all inquiries must "be made exclusively through Kathryn Roberts or ICSB Atlanta" and that "ICSB guarantees live semen only." *Id.* The "About Us" section states that Savants "is owned and operated by Kathryn Roberts" who "started the business in 2010 and has been the driving force behind its steady growth over the past 10+ years." *Id.* at Ex. 3 at 28, 32. The "Frequently Asked Questions" section explains that the site provides answers "about the processes and forms ICSB-Atlanta utilizes" and gives a contact link if visitors "have further questions about ICSB-Atlanta procedures or forms." *Id.* at Ex. 3 at 40. On a page entitled "ICSB Semen Freezing Methods and Services," the website describes "the viability of ICSB canine semen freezing technologies and procedures as well as our long-term commitment to our clients and their studs' semen stored at ICSB Oregon Main Office and its licensed centers domestically and internationally." *Id.* at Ex. 3 at 35. It goes on to describe ICSB and its techniques, noting that ICSB was established in 1971 and has "not only outlasted our competitors, but is also a thriving leader in the field." *Id.* at Ex. 3 at 38. The website includes a "Stud Dog Registry" which lists various dogs by AKC numbers and their associated stud fees. *See, e.g.*, *id.* at Ex. 3 at 10-12. It also includes a "Stud Request Form" that visitors can fill out and submit, *id.* at Ex. 3 at 25, 27, as well as several forms that can be downloaded, *id.* at Ex. 3 at 66-71. The forms name the company as Atlanta Canine Reproduction and include an "icsbatlanta@att.net" email address. *See e.g.*, *id.* at Ex 3 at 71. Users are also able to shop for certain products and add them to their digital carts. *Id.* at Ex. 3 at 61.

**B.    Procedural Background**

Plaintiff initiated this action on September 21, 2025. Compl. Plaintiff brings several claims for breach of contract against Roberts and Atlanta Canine, and additionally brings claims for trademark

5

infringement, unfair competition, and false advertising against all defendants. *See id.* Roberts and Atlanta Canine filed their answer, affirmative defenses, and counterclaims on October 22, 2025, ECF 6. Savants filed the present motion to dismiss for lack of personal jurisdiction on November 5, 2025, ECF 8 ("Savants Mot."). Plaintiff responded in opposition on December 3, 2025, ECF 13 ("Pl. Resp."), and Savants filed its reply on December 17, 2025, ECF 14 ("Savants Reply").

## DISCUSSION

Plaintiff has established that the Court has personal jurisdiction over Savants. Because this is a diversity action, the Court looks to Oregon law to determine whether it has personal jurisdiction over the defendants. *Boschetto*, 539 F.3d at 1015 ("When no federal statute governs personal jurisdiction, the district court applies the law of the forum state."). "Oregon's long-arm statute confers jurisdiction to the extent permitted by due process." *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (per curiam). Thus, for this Court's "purposes, jurisdiction under state law and due process are coextensive." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161 (9th Cir. 2023).

A court has personal jurisdiction over a defendant when the defendant has "such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)). The emphasis on defendants' contacts with the forum has "led to [the Supreme Court] recognizing two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Id.* Plaintiff concedes that the Court does not have general personal jurisdiction over Savants. Pl. Resp. 5. The only question is thus whether the Court has specific jurisdiction over Savants. The allegations and evidence show that the Court does.

The Ninth Circuit analyzes specific jurisdiction using a three-prong test:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

6

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of meeting the first two prongs while the defendant shoulders the burden on the final prong." *Davis*, 71 F.4th at 1162.

### A.    Purposeful Direction

How courts assess the first prong is typically determined by whether the case sounds in contract or tort. *See id.* When a case sounds in contract, courts generally apply the "purposeful availment" test. *Id.*; *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023). Courts generally apply the "purposeful direction" test when the case sounds in tort. *Davis*, 71 F.4th at 1162; *Herbal Brands*, 72 F.4th at 1090. "Although they are distinct, at bottom, both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they 'will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Herbal Brands*, 72 F.4th at 1090 (cleaned up). Accordingly, there is "no need to adhere to an iron-clad doctrinal dichotomy to analyze specific jurisdiction." *Davis*, 71 F.4th at 1162. Courts should instead "comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiffs' claims—which may mean looking at both purposeful availment and purposeful direction." *Id.*

While plaintiff brings breach of contract claims against Roberts and Atlanta Canine, plaintiff only brings claims against Savants for trademark infringement, unfair competition, and false advertising. Compl. 14-16. Because the claims against Savants sound only in tort, the purposeful direction test governs. *See Tippsy, Inc. v. Tipsy, LLC*, No. 24-7587, 2026 WL 751943, at *1 (9th Cir. Mar. 17, 2026) (explaining that trademark infringement claims sound in tort); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (finding action for unlawful competition and trademark dilution "akin to a tort case"); *Robin Singh Educ. Servs., Inc. v. Nathan Cepelinski*, No. CV 20-7516-DSF (PVCx), 2021 WL 945243, at *4 (C.D. Cal. Jan. 7

26, 2021) ("Both unfair competition and false advertising sound in tort and therefore the purposeful direction test is appropriate here."). Savants has purposefully directed its activities towards Oregon and satisfied the first prong of the personal jurisdiction analysis accordingly. Courts analyzing purposeful direction look to the "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984). *E.g. Davis*, 71 F.4th at 1162. This test "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (quoting *Dole Food v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

To satisfy the first element, "the defendant must act with the 'intent to perform an actual, physical act in the real world.'" *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 806). As Savants largely concedes, it acted intentionally when it created its website. *See* Savants Reply 4-5; *see also Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010), *abrogated on other grounds by Axion Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (noting that the defendant "committed an intentional act when it created and posted . . . its website"). The intentional act requirement is satisfied.

The closer question is whether Savants expressly aimed its conduct at Oregon. The parties raise numerous arguments on this point. Savants emphasizes that it has not entered into any contracts with plaintiff, run any Oregon-specific marketing, nor made any Oregon transactions. *See* Savants Mot. 5-7. Plaintiff highlights Savants' attendance at national dog shows and publication in highly specialized magazines. *See* Pl. Resp. 7. Both make much ado about whether Savants is Atlanta Canine's alter ego. *See* Savants Mot. 7-11; Pl. Resp. 4-5, 9. However, the Court does not reach these arguments because it finds that Savants' website sufficiently establishes jurisdiction.

Operation of a website can establish direct aiming when it is "in conjunction with 'something more.'" *Herbal Brands*, 72 F.4th at 1092 (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011)); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)

("[O]perating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient to confer personal jurisdiction." (quoting *Panavision*, 141 F.3d at 1320)).   That requisite "something more" can be found in numerous ways, such as through the website's level of interactivity, exploitation of the forum market, "the geographic scope of [the] defendant's commercial ambitions," or individual targeting of a "plaintiff known to be a forum resident." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 757-58 (9th Cir. 2025) (en banc).   But "something more" does not "require some sort of differential treatment of the forum state." *Id.* at 758.   Instead, "an interactive platform expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated or fortuitous, even if that platform cultivates a nationwide audience for commercial gain." *Id.* (cleaned up).

Savants' website is moderately interactive.   It allows visitors to create usernames, log in through web authentication, submit "Stud Request Form[s]," and add products to their carts.   Wu Decl. Ex. 3 at 19-20, 25, 27, 61.   The website's reach is national: it mentions that Savants "is available to provide a service clinic to show-giving clubs in almost all states" and that kennel visit requirements vary by State—three dogs are required in Georgia and, "[f]or all other states," five or more dogs are required to schedule a kennel visit.   *Id.* at Ex. 3 at 29-30.   This means that Savants' website is "an interactive platform . . . [that] cultivates a nationwide audience for commercial gain." *Briskin*, 135 F.4th at 758 (cleaned up).   Express aiming should therefore be found if Savants' contacts with Oregon "are its own choice and not random, isolated, or fortuitous." *Id.* (citations and quotation marks omitted).

Savants' contacts with Oregon are far from random.   ICSB is unquestionably an Oregon company. *See* Compl. ¶ 2.   Savants does not claim ignorance of this fact.   Nor could it, as Savants states on its own website that ICSB maintains its main office in Oregon. *See* Wu Decl. Ex. 3 at 35.   The heart of plaintiff's allegations is that Savants (and its co-defendants) infringed upon plaintiff's trademark.   Plaintiff thus alleges that Savants has individually targeted an Oregon company by wrongfully using that Oregon company's protected marks.   Courts within the Ninth Circuit have come out both ways on deciding whether the individual targeting of a resident plaintiff is sufficiently "something more" in an intellectual property action. Since "the plaintiff cannot be the only link between the defendant and the forum," *Walden*, 571 U.S. at 285,

9

some courts have found the publication of a resident plaintiff's protected work insufficient to support jurisdiction. *See, e.g.*, *Barkley & Assocs. v. Brunshidle*, No. CV 25-03576-MWF (JPRx), 2025 WL 2946906, at *4 (C.D. Cal. Sept. 10, 2025) (collecting cases). Others have found that the "the express aiming requirement may be fulfilled where a resident plaintiff alleges harm caused by copyright infringement in the forum state." *Visual Supply Co. v. Khimji*, No. 24-cv-09361-WHO, 2025 WL 2684380, at *3 (N.D. Cal. July 10, 2025) (citations omitted); *see Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 962 (N.D. Cal. 2015) ("Accordingly, Adobe makes a *prima facie* showing that Blue Source willfully infringed Adobe's copyrights and trademarks, knowing that Adobe was a resident of this District. Under Ninth Circuit precedent, this is sufficient to satisfy the expressly aimed inquiry." (citations and quotation marks omitted)); *see also Int'l Aero Prods., LLC v. Aero Advanced Paint Tech., Inc.*, 325 F. Supp. 3d 1078, 1085 (C.D. Cal. 2018) ("[A]ll that a plaintiff needs to show is that the defendant 'willfully infringed' and that the defendant knew that the plaintiff had its principal place of business in this district." (citations omitted)). Post-*Briskin*, it seems the second line of cases have the stronger argument. Using a protected mark, with knowledge of its protection and of the plaintiff's home state, is a defendant's "own choice and not random, isolated, or fortuitous." *Briskin*, 135 F.4th at 758 (citation and quotation marks omitted).

However, the Court need not decide here whether that alone is sufficient because Savants' website contains much more. Savants' website does not only use the allegedly infringing trademark; it also repeatedly appears to suggest that Savants and ICSB are one in the same. For example, the Terms of Use says: "ICSB guarantees live semen only. *We* do not guarantee pregnancy[.]" Wu Decl. Ex. 3 at 7, 19 (emphasis added). The "ICSB Semen Freezing Methods and Services" section most strongly blurs the line between the two companies. After describing the background and historical successes of ICSB semen freezing technologies, the website states, "*We* are proud of *our long history of success*, starting with Professor Platz' pioneering of the pellet-freezing method . . . ICSB takes the time and effort to studiously examine each sample that we collect and freeze. *We* care too much about to automatize any procedure." *Id.* at Ex 3 at 35-36 (emphases added). That same section also mentions "*[o]ur* extensive training and expertise," that "*our* entire freezing process has shown to be unrivaled," and that "*we* have an over 90%

10

success rate with surgical inseminations at our partner veterinarian facility." *Id.* at Ex 3 at 36-38 (emphases added). The section ends by stating:

> It is due to ***our tried and tested methods, established since 1971, that ICSB has not only outlasted our competitors, but is also a thriving leader in the field***. ***Our reputation*** precedes ***us*** internationally, confirming the intercontinental need for ***our*** reliable technology and methods. This increasing demand for ***our services and products inspires the expansion of our facilities worldwide***. ICSB ***has remained foremost in the field of frozen canine semen for the last half century*** and will continue to grow and ***serve our clients*** for the next half century and beyond.

*Id.* at Ex. 3 at 38 (emphases added). Since Savants was founded in 2025, Heltzel Decl. ¶ 3, Savants cannot reasonably claim that it has personally "remained foremost in the field . . . for the last half century," Wu Decl. Ex. 3 at 38.

Even beyond this conflation, Savants' website also expressly advertises its use of ICSB's main office in Oregon. The website states, "This proves the viability of ICSB canine semen freezing technologies and procedures as well as ***our long-term commitment to our clients and their studs' semen stored at ICSB Oregon Main Office*** and its licensed centers domestically and internationally." Wu Decl. Ex. 3 at 35. Boasting of a long-term commitment to clients' products stored in Oregon is a purposeful, direct targeting towards Oregon. Taken together, the express aiming prong is satisfied.

**B.     Forum Related Activities**

Plaintiff's claims against Savants undoubtedly arise out of Savants' contacts with Oregon. This is a trademark dispute. Savants' website allegedly uses plaintiff's trademark. Savants' website also appears to conflate Savants with ICSB and to speak of using ICSB's Oregon office. The line from Savants' activities to plaintiff's claims is direct. The second prong is easily satisfied.

**C.     Reasonableness**

"Once Plaintiff satisfies the first two prongs, 'the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable.'" *Herbal Brands*, 72 F.4th at 1096 (quoting *Schwarzenegger*, 374 F.3d at 802). Courts employ a seven-factor balancing test to assess reasonableness:

(1) the extent of the defendant's purposeful interjection into the forum state's affairs;

11

(2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018). Savants has not shown that these factors would render the exercise of jurisdiction unreasonable.

First, the extent of interjection does not clearly favor one side or the other. Savants has interjected itself by using the name of a known Oregon business and boasting about the use of an Oregon office, but the evidence does not show that Savants has attended any Oregon dog shows or made sales to Oregon customers. Second, the burden on Savants is slight. Savants is run by Roberts's husband and, as the evidence makes clear, at least employs Roberts as an agent. Heltzel Decl. ¶¶ 3-4, 9. While the Court need not decide quite how entangled the two companies are, this is not a situation involving an entirely independent third party with no relation to the ongoing litigation. Litigation will continue in this Court against Roberts and Atlanta Canine, regardless of the outcome of this motion, and it is not unreasonable for Savants to defend itself in the same forum given its close ties with the other defendants. The third factor, conflict of laws, is a nonissue. Savants has not identified any conflicts of law, and the Court is aware of none. *See* Savants Mot. 11-12. As to the fourth factor, Oregon has a substantial interest in protecting the trademarks of its companies and thus a substantial interest in the dispute. Factors five and six echo factor two—Oregon is without question the most efficient and convenient forum to handle this dispute since it will continue to handle the claims against Roberts and Atlanta Canine regardless. Finally, for factor seven, there does exist an alternative forum in Georgia. However, that forum would be far less efficient and convenient as it would essentially force the parties into dual litigation. Altogether, Savants has not shown that the exercise of jurisdiction here would be unreasonable or upset the notions of fair play and substantial justice.

Plaintiff has sufficiently demonstrated that this Court has personal jurisdiction over Savants. Savants' motion is denied.

## CONCLUSION

For the reasons stated herein, Savants' motion to dismiss, ECF 8, is DENIED.


IT IS SO ORDERED.


DATED this 11th day of May, 2026.

Adrienne Nelson
United States District Judge